```
                IN THE UNITED STATES DISTRICT COURT
                   FOR THE NORTHERN DISTRICT OF ALABAMA
                            SOUTHERN DIVISION

WESLEY HARRIS, JR.,            }
                               }
     Plaintiff,                }
                               }   CIVIL ACTION NO.
v.                             }   03-AR-0640-S
                               }
JOHN E. POTTER, POSTMASTER     }
GENERAL,                       }
                               }
     Defendant.                }
```

**MEMORANDUM OPINION**

Before the court is the second motion of defendant, John E. Potter, Postmaster General (hereinafter referred to as "Postal Service"), for summary judgment. On March 20, 2003, plaintiff, Wesley Harris, Jr. ("Harris"), filed this action alleging that his former employer, the Postal Service, violated his rights under the Rehabilitation Act of 1973 ("Rehabilitation Act") and the Age Discrimination in Employment Act of 1967 ("ADEA"). Harris makes three claims: (1) disability discrimination in violation of the Rehabilitation Act; (2) discrimination in violation of the ADEA; and (3) retaliation for engaging in an activity protected by the Rehabilitation Act.

On December 1, 2003, the Postal Service filed its first motion for summary judgment, arguing that Harris's claims should be dismissed because Harris failed to exhaust his administrative remedies. By memorandum opinion and order entered February 27,

1



2004, the court rejected the Postal Service's argument and denied its motion for summary judgment.  The Postal Service's second motion for summary judgment is now before the court.

### *Summary Judgment Facts*

Harris, who is now sixty-eight years old, worked for the Postal Service as a clerk at the Birmingham main post office for over forty years.  Harris is also a disabled veteran who suffers from a permanent hip condition called myositis ossificans.  This condition caused him to occasionally miss work to go see his doctor; and, according to Harris's testimony, he is periodically bedridden when his condition becomes inflamed.  Harris Depo. p. 26.

In April 1996, the Postal Service suspended Harris for seven days for "Failure to Maintain a Regular Work Schedule."  Harris's suspension notice was issued by his immediate supervisor, Edward Mardant ("Mardant"), and included the following explanation:

> "A review of your attendance record reveals you are undependable with respect to your attendance...it has been determined that you are seriously lacking in dependability."

The suspension notice goes on to list ten different occasions in a six-month period when Harris "used unscheduled leave," and it refers to four separate "letters of warning" pertaining to Harris's "failure to maintain a regular work schedule."  Harris does not contest the fact that he was absent on those dates. Instead, Harris contends that his hip condition caused those

2

absences and that, due to the unpredictable nature of his condition and its resulting inflammations, the Postal Service had no right to suspend him, even though he did not seek or obtain permission to be off work on those occasions.

## Analysis

The Postal Service argues that it is entitled to judgment as a matter of law because: (1) Harris is neither "disabled" nor an otherwise qualified individual within the meaning of the Rehabilitation Act; (2) Harris has not presented evidence to establish a *prima facie* age discrimination or retaliation claim; and (3) Harris has presented no evidence of pretext to rebut the Postal Service's legitimate, non-discriminatory reason for its action. For the reasons that follow, the court will grant the Postal Service's motion.

*Rehabilitation Act Claim*

Harris claims that the Postal Service suspended him in 1996 because of his disability, in violation of the Rehabilitation Act. 29 U.S.C. 791.[1] The Postal Service argues that summary judgment is appropriate because Harris is not disabled as that term is used in the Rehabilitation Act. For summary judgment purposes, the Postal Service does not contest the fact that Harris is bedridden when his hip condition becomes inflamed, nor

---

[1] The standards for determining whether plaintiff is an otherwise qualified individual with a disability under the Rehabilitation Act are the same as the standards under the Americans with Disabilities Act. 29 U.S.C. § 791(g); 29 C.F.R. 1614.203(b).

does it contest the fact that the condition becomes inflamed about once a month. When Harris's condition becomes inflamed, there is no question that he is substantially limited in performing numerous activities that are of "central importance to most people's daily lives." *Toyota Motor Mfg, Ky., Inc. v. Williams*, 423 U.S. 184, 187 (2002). The precise question is whether a condition that clearly substantially limits major life activities, if it only recurs once a month, is a disability.

   An "disability" is a physical impairment that "substantially limits" one or more of a person's "major life activities." *Id.* at 198. Intermittent, non-permanent conditions are usually not disabilities under the Rehabilitation Act. *See* 29 C.F.R. § 1630.2(j); *Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 952 (7th Cir. 2000)(infrequent arthritis "flare-ups", one or two per year, did not render condition a disability); . Harris's condition is permanent, and viewing the record in the light most favorable to him, his condition severely limited his ability to function on a monthly basis. Based on the evidence before the court on summary judgment, it cannot agree with the Postal Service that Harris's condition does not rise to the level of a disability. *See Williams*, 534 U.S. at 692 ("Congress intended the existence of a disability to be determined in such a case-by-case manner"); *Dutton v. Johnson County Bd. of Com'rs*, 859 F.Supp. 498, 506 (D. Kan. 1994) (denying summary judgment where

4

plaintiff presented evidence that his allegedly disabling migraine headaches were severe and frequent).

Nonetheless, summary judgment is appropriate here because Harris's unpredictable and frequent absences during the period in question lead to the conclusion that he was not an "otherwise qualified" individual under the Act.  To maintain his action, Harris must show that he was able to perform the essential functions of his job, with or without a reasonable accommodation. *Jackson v. Veterans Administration*, 22 F.3d 277, 278 (11th Cir. 1994).  Inasmuch as Harris was bedridden when his condition flared up, he could only perform the essential functions of his job *if* a reasonable accommodation would include letting him take time off without notice when his hip condition flared up.

The Postal Service presented evidence that Harris's recurring, unpredictable absences created a hardship.  Def. Ex. 8.  Harris, on the other hand, failed to establish that his ten absences in a six-month period could have been reasonably accommodated to allow him to perform the essential functions of his job.  See *Earl v. Mervyns, Inc.*, 207 F.3d 1361, 1367 (11th Cir. 2000) ("burden of identifying an accommodation that would allow a qualified employee to perform the essential functions of her job rests with that employee"); *Jackson*, 22 F.3d at 277 (temporary employee who unpredictably missed work due to rheumatoid arthritis was not otherwise qualified individual

5

because he failed to satisfy presence requirement of his job).

In *Jackson*, the Eleventh Circuit rejected the plaintiff's argument that he should be able to swap shifts or delay his start time when his arthritis flared up, stating:

> Such accommodations do not address the **heart of the problem: the unpredictable nature of Jackson's absences. There is no way to accommodate this aspect of his absences.** Requiring the VA to accommodate such absences would place upon the agency the burden of making last-minute provisions for Jackson's work to be performed by someone else. Such a requirement would place an undue hardship on the agency.

22 F.3d at 279 (emphasis added).

Similarly, Harris's unpredictable, periodically incapacitating condition rendered him unable to perform the essential functions of his job. Therefore, his discrimination claim under the Rehabilitation Act fails as a matter of law.[2]

*Age Discrimination*

The Postal Service argues that Harris has failed to show that he was treated differently than a younger employee was treated. This is one of the necessary elements of a *prima facie*

---

[2] The court notes that Harris points to evidence that the Postal Service, two years after the date of the suspension that is the subject of this action, agreed not to charge him with unscheduled absences when he had to miss work due to his hip condition, provided that he supply current documentation that the condition was covered by the Family and Medical Leave Act (FMLA). To the extent Harris relies on this agreement as evidence that he was entitled to miss work as a reasonable accommodation, the court finds that evidence of a subsequent agreement based on FMLA leave does nothing to establish that Harris was qualified to perform the essential functions of his job, including presence, in the context of a disability discrimination case. The same is true of Harris's references to an 1997 administrative decision requiring him to medically document any absences related to his condition.

age discrimination claim under the ADEA.[3] *See Turlington v. Atlanta Gas Light Co.*, 135 F.3d 1428, 1432 (11th Cir. 1998). Harris points to an allegedly similar seven-day suspension given to a younger employee, Gabriel Jenkins, that was later reduced to a letter of warning. The critical undisputed fact regarding the two suspensions is that Mardant treated Harris and Jenkins exactly the same. The fact that Jenkins later sought and obtained relief internally from the suspension is irrelevant, because the suspension by Mardant is the discriminatory act that is the subject of Harris's complaint, and Mardant issued suspensions to Harris and Jenkins alike. Because Harris is unable to point to a younger person who was treated more favorably than he was regarding absences, his ADEA claim fails.

*Retaliation under the Rehabilitation Act*

The Postal Service argues that Harris cannot make out a *prima facie* retaliation case because he has failed to point to any evidence linking his protected prior EEO complaints to the allegedly retaliatory suspension that is the subject of his complaint. The court agrees. Harris presented no evidence, direct or otherwise, to relate his seven-day suspension to his prior protected expression. There is a fact dispute as to

---

[3] Defendant also contends that, even if Harris has established a *prima facie* case, his claim fails because he has presented no evidence of pretext to rebut the Postal Service's legitimate, non-discriminatory reasons for suspending him. Because the court determines that Harris has failed to raise a *prima facie* case, it will not address this second contention.

whether Mardant was even aware of Harris's prior EEO activity, but even assuming such knowledge, Harris cannot survive summary judgment based on the assertion that complaints in other civil actions against the Postal Service show a history of discrimination by the Postal Service in the State of Alabama sufficient to allow a jury to find that the Postal Service's stated reason for suspending Harris was pretextual.  To allow evidence of other bad acts to prove the bad act being charged is too iffy a way to prove pretext.

### Conclusion

In light of the foregoing analysis, the court expressly holds that no genuine issue of fact exists and that the Board is entitled to judgment as a matter of law.  By separate order entered contemporaneously herewith, defendant's motion for summary judgment will be GRANTED.

DONE this 29th day of October, 2004.

WILLIAM M. ACKER, JR.
UNITED STATES DISTRICT JUDGE